UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Zachary Wilson,                                    Case No. 1:13cv631

       Plaintiff,                               Judge Michael R. Barrett

       v.

Wintrow Construction Corp., *et al*.,

       Defendants.

### **OPINION & ORDER**

This matter is before the Court upon Defendant Wintrow Construction Corporation and Defendant Barberton Construction's Motions for Summary Judgment. (Docs. 21, 22). Plaintiff Zachary Wilson filed Responses in Opposition (Docs. 33, 34) and Defendants filed Replies (Docs. 38, 42).

Also before the Court is Plaintiff's Motion to Amend Complaint (Doc. 35); Defendant Wintrow Construction's Motion to Strike Affidavit of Zachary Wilson (Doc. 40); Defendant Wintrow Construction's Motion to Strike the Expert Report of Phillip L. Colleran (Doc. 41). These Motions have been fully briefed. (Docs. 43, 44, 45, 46, 47, 48, 49).

### I.     BACKGROUND

Plaintiff's claims arise out of an injury he suffered while he was working on a job upgrading railroad track at Procter & Gamble's Ivorydale location. Defendant Wintrow Construction Corporation ("Wintrow") bid for, and won the work on the Procter & Gamble job. (Doc. 26, Don Wintrow Dep. at 36). Wintrow is a union company. (Id. at 6). According to Don Wintrow, the Superintendent for Wintrow, Defendant Barberton Construction, Inc. ("Barberton") was created as a non-union company in order to allow

Wintrow to bid more competitively. (Id. at 8, 24-25). If Wintrow won a bid for a job which was nonunion, Wintrow would use Barberton employees. (Id. at 20). Barberton would then invoice Wintrow for labor charges. (Id. at 50; see, e.g. Doc. 22-1, PAGEID # 116-124). There is no written contract or agreement memorializing this arrangement.

On the Procter & Gamble job, Wintrow was the general contractor, and Barberton was the subcontractor. (Id. at 33-35). Chris Lewicki, a Wintrow employee, was considered either the supervisor or the foreman on the job. (Id. at 16; Doc. 25, Chris Lewicki Dep. at 59-60). Seth Huston, a Barberton employee, was considered a crew leader, foreman or supervisor. (Wintrow Dep. at 17; Lewicki Dep. at 59). Plaintiff was hired by Barberton. (Wintrow Dep. at 49).

On the day of his injury, Plaintiff selected a grinder from Wintrow's truck. (Doc. 24, Zach Wilson Dep. at 23). However, the grinder was not listed in Wintrow's inventory, nor did it bear the identification Wintrow used to mark its tools. (Wintrow Dep. at 72).[1] Soon after Plaintiff began using the grinder, he heard an extremely loud pop, and then he fell to the ground. (Wilson Dep. at 30). Plaintiff looked down and saw that his left foot was disfigured and his right thigh was bleeding badly. (Id. at 31). After his injury, Plaintiff learned that the guard was missing from the grinder. (Wilson Dep. at 29-30).

In his Complaint, Plaintiff brings claims for negligence against Wintrow and employer intentional tort against Barberton.

However, in response to Barberton's Motion for Summary Judgment, Plaintiff agreed that Barberton should be granted summary judgment because the grinder came from Wintrow's truck and was not provided by Barberton. (Doc. 34, PAGEID #847).

---

[1] Wintrow learned of the tool's existence only after Plaintiff's injury, and the origin of the tool is unknown. (Wintrow Dep. at 71, 97).

Accordingly, Barberton's Motion for Summary Judgment is GRANTED and the claim against Barberton is DISMISSED. Therefore, the only remaining claim is a claim for negligence against Wintrow.

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

### B. Motion to Strike Plaintiff's Affidavit

Wintrow moves to strike portions the affidavit of Zachary Wilson which Wintrow argues contradict his sworn deposition testimony and discovery responses. Specifically, Wintrow seeks to strike the following statements in Wilson's affidavit:

> 3. I, Zachary Wilson, was at no point in time under the impression that I was under the employ of Wintrow Construction Corp.
>
> …
>
> 6. I worked closely with Seth Houston on most of the days I worked on the P&G job. He was the person who controlled my day-to-day work. He was the person on the job who would judge the quality of my work and move me from one task to the next during most working days.
>
> 7. Christopher Lewicki never corrected my work, nor did he direct the detail and quality of my work. That was done by Seth Houston. Christopher

Lewicki did generally assign projects to Barberton.

(Doc. 34-10. Zachary Wilson Aff.)

Wintrow points out that paragraph 3 of Plaintiff's Affidavit is contrary to the hospital's emergency department "Face Sheet" which identifies Plaintiff's employer as "Wintrow Construction." (Doc. 37, Kennedy Decl., Ex. D). Wintrow also points out that Plaintiff's workers' compensation claim forms are signed by Plaintiff and state that Wintrow is his employer. (Kennedy Decl., Ex. B and C). While it is not clear whether Plaintiff provided the information about his employer to the hospital, Plaintiff did sign the workers' compensation form which indicates that he has "answered the foregoing questions truthfully and completely." (Doc. 37, PAGE ID # 954). "[A] party cannot create a disputed issue of material fact by filing an affidavit that contradicts the party's earlier deposition testimony." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006). Therefore, the Court will not consider paragraph 3 of Plaintiff's affidavit to the extent that it states that at no time was Plaintiff under the impression that he was under the employ of Wintrow. Wintrow's Motion to Strike is GRANTED as to this statement.

Next, Wintrow explains that paragraph 6 of Plaintiff's Affidavit is contrary to his deposition testimony. Wintrow explains that when Plaintiff was asked in his deposition what Seth Houston's role was, he replied that Houston was a "[g]eneral laborer, the same as myself." (Wilson Dep. at 63). Plaintiff also testified that he "did not report to anyone else" other than Lewicki. (Id. at 55). However, in his deposition, Plaintiff was not specifically asked whether Houston controlled his day-to-day work. Instead, Plaintiff was asked if Lewicki "would kind of go around and just keep an eye on everybody and oversee

4

everybody." (Id. at 23). Plaintiff responded: "He would delegate, you know, you two go here; you two go here and then it was kind of left up to us to make sure the work was done." (Id.) This testimony does not conflict with Plaintiff's statement in his affidavit that Houston was the person who controlled Plaintiff's day-to-day work. While Plaintiff testified that Lewicki delegated the work, Plaintiff did not testify about the role Houston played when it came to the control of his day-to-day work. Therefore, Wintrow's Motion to Strike is DENIED as to this statement.

Finally, Wintrow explains that paragraph 7 of Plaintiff's affidavit conflicts with his deposition testimony that Lewicki "would delegate – who was workin' where and what jobs were to be done." (Wilson Dep. at 22). Plaintiff also agreed with the statement that Lewicki was the "head guy in charge" and "would tell everyone what their jobs were for the day." (Id.) The Court finds that this testimony does not directly conflict with paragraph 7 of Plaintiff's affidavit. *See Carson v. Ford Motor Co.*, 413 F. App'x 820, 821 n. 1 (6th Cir. 2011) ("On summary judgment, the district court should not refuse to consider a statement contained in an affidavit that is not directly contradicted by prior deposition testimony."). In paragraph 7, Plaintiff states Lewicki did not control the details or the quality of his work. This does not conflict with Plaintiff's deposition testimony. In his deposition, Plaintiff was asked if Lewicki "ever corrected your work, specifically, or told you how to do something?" (Id. at 23). Plaintiff replied, "No." (Id.) In addition, Plaintiff's statement in his affidavit that Lewicki "did generally assign projects" does not directly conflict with his deposition testimony that Lewicki would delegate the jobs which needed to be to be done. Therefore, Wintrow's Motion to Strike is DENIED as to paragraph 7.

5

### C. Motion to Strike expert report

Wintrow moves to strike the expert report of Phillip L. Colleran, which Plaintiff submitted in support of his memorandum opposing Wintrow's Motion for Summary Judgment. (Doc. 33-5). Wintrow argues that Colleran's opinion that Wintrow had "deliberate intent" to injure Plaintiff because it "furnished an unguarded grinder" is unsupported by the factual record, inconsistent with Ohio law on employer intentional tort, and is an impermissible legal conclusion.

Federal Rule of Evidence 704(a) states that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, the Sixth Circuit has explained that under Federal Rule of Evidence 704(a), "[w]hen the rules speak of an expert's testimony embracing the ultimate issue, the reference must be to stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue." *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) (holding that expert could not testify that lax discipline policies of police department indicated city was deliberately indifferent). Along those lines, one Ohio court held that the meaning of the term "deliberate removal" in Ohio Revised Code 2745.01 "is to be ascertained as a matter of law by the court, and that the testimony of appellants' safety engineer is irrelevant to that determination." *Fickle v. Conversion Techs. Int'l, Inc.*, 2011 WL 2436750, *4 (Ohio Ct. App. June 17, 2011). Moreover, as one district court has observed: "No one, including an expert, can delve into a defendant's subjective state of mind." *Woodhull v. Cty. of Kent*, No. 1:04-CV-203, 2006 WL 2228986, at *6 (W.D. Mich. Aug. 3, 2006) (explaining that "[o]bjective facts and circumstances may provide evidence

6

of a defendant's state of mind, but conclusory statements that a defendant acted with deliberate indifference do not assist the trier of fact."). Finally, expert testimony is inadmissible where conclusions are drawn from facts which are contradicted by the record evidence. *See Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. 1999).

In his report, Colleran states that "[f]urnishing an unguarded grinder to Plaintiff is no different than deliberately removing the safety guard and then furnishing the unguarded grinder to Plaintiff." (Doc. 33-5, PAGEID # 747). However, there is some question regarding whether or not Wintrow furnished the grinder to Plaintiff. (Wintrow Dep. at 72) (explaining that the grinder "didn't have a Wintrow number on it, and nobody could answer where it came from, except that it came out of the truck.").

Therefore, the Court will disregard Colleran's opinion to the extent that Colleran opines that Wintrow had deliberate intent to injure Plaintiff because it furnished an unguarded grinder to Plaintiff. Accordingly, Wintrow's Motion to Strike the Expert Report of Phillip L. Colleran is GRANTED as to these statements in the report.

**D. Motions for Summary Judgment**

Wintrow and Barberton separately argue that Plaintiff was their employee, and therefore they are entitled to workers' compensation immunity.

Ohio Revised Code § 4123.74 provides for workers' compensation immunity:

Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter.

7

Ohio Rev. Code § 4123.74. "[F]or the purposes of workers' compensation immunity, an employee may have dual employment status." *Below v. Dollar Gen. Corp.*, 163 Ohio App. 3d 694, 699, 840 N.E.2d 215, 218 (Ohio Ct. App. 2005). This situation arises in situations involving temporary or loaned employees:

> Where . . . an employer employs an employee with the understanding that the employee is to be paid only by the employer and at a certain hourly rate to work for a customer of the employer and where it is understood that that customer is to have the right to control the manner or means of performing the work, such employee in doing that work is an employee of the customer within the meaning of the Workmen's Compensation Act; and, where such customer has complied with the provisions of the Workmen's Compensation Act, he will not be liable to respond in damages for any injury received by such employee in the course of or arising out of that work for such customer.

*Daniels v. MacGregor Co.*, 2 Ohio St.2d 89, 206 N.E.2d 554, 556 (Ohio 1965).

Plaintiff argues that he was not an employee loaned to Wintrow or working temporarily for Wintrow, but instead he was employee of Barberton. The Ohio Supreme Court has explained:

> Whether someone is an employee . . . is ordinarily an issue to be decided by the trier of fact. The key factual determination is who had the right to control the manner or means of doing the work.

*Bostic v. Conner*, 37 Ohio St.3d 144, 524 N.E.2d 881, Syll. ¶ 1 (Ohio 1988). "The factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes traveled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts." *Id*. at 146. However, if the employer is merely interested in the result and does not retain the right to direct the manner in which the work is completed, there is no employment relationship. *Marshall v. Aaron*, 15 Ohio St. 3d 48, 49, 472 N.E.2d 335, 337 (Ohio 1984).

Barberton hired Plaintiff to work on the Procter & Gamble job. (Wintrow Dep. at 49). When he was hired, Plaintiff completed paperwork from Barberton and received materials from Barberton, including Barberton's employee handbook. (Doc. 33-10). Plaintiff received his paychecks from Barberton. (Wilson Dep. at 54). Barberton was responsible for withholding taxes from Plaintiff's paycheck. (Wintrow Dep. at 55). Barberton maintains a separate worker's compensation policy from that of Wintrow. (Id.) Plaintiff was covered by Barberton's worker's compensation policy. (Id. at 111).

While working on the Procter & Gamble job, Plaintiff selected tools from a Wintrow tool truck. (Wilson Dep. at 23-24). On the Procter & Gamble site, there were three Wintrow employees including Lewicki. (Wintrow Dep. at 37). There were four Barberton employees, including Plaintiff, at the Procter & Gamble site. (Lewicki Dep. at 26-28).

As foreman for Wintrow, Lewicki was responsible for the scheduling of the work to be done as part of the Procter & Gamble job. (Wintrow Dep. at 16). Plaintiff testified that Lewicki "delegated groups of people to go to each part of the track to work." (Wilson Dep. at 26). However, Plaintiff also testified that "it was kind of left up to us to make sure the work was done." (Id. at 23).

Houston, a Barberton employee, operated as the foreman, supervisor or crew leader on the Procter & Gamble job. (Wintrow Dep. at 17; Lewicki Dep. at 59). In his deposition, Lewicki explained:

> Q: So was Seth Houston then the person that directed people, you know, to do different tasks on the job?
>
> A: Seth was just a really good leader.
>
> Q: Okay.

9

> A: I don't know that we ever wrote it down that he was the foreman, but people looked to him for leadership all the time.

(Lewicki Dep. at 59-60).

The Court concludes that there is a genuine issue of material fact as to whether Plaintiff was an employee of both Barberton and Wintrow for purposes of worker's compensation immunity. Plaintiff was hired by Barberton, paid by Barberton, and covered under Barberton's workers' compensation policy. However, "[w]hether a loaned servant is a customer's employee depends on who had the right to manage the manner or means of day-to-day control over the employee, not who was responsible for administrative human resources matters." *Cowan v. Interdyne Corp.*, 2013 WL 6846532013, *3 (Ohio Ct. App. 2013).

Both Wintrow and Barberton employees were working on a site that belonged to neither Wintrow nor Barberton. While Lewicki was present at the site and assigned tasks, there is evidence that Houston also played a role in controlling the day-to-day tasks which were a part of the Procter & Gamble job. Plaintiff testified that even though Lewicki delegated the work, "it was kind of left up to us to make sure the work was done." There is also evidence that Barberton was a subcontractor and was brought in by Wintrow for the specific purpose of upgrading the track. Therefore, there is conflicting evidence as to who controlled the employees' manner or means of performing work.

Wintrow argues that even if Wintrow did not actually exercise control over Plaintiff's work, it still reserved the right to control the manner and means of doing the work. In Plaintiff's deposition, Plaintiff was asked whether Lewicki could have come over while Plaintiff was working and said, "actually, you gotta do it like this." (Wilson Dep. at

76). Plaintiff responded: "Yes. He was my boss." (Id.)

Ohio courts have held that "[t]he ultimate question is not whether the employer actually exercises such control, but whether he has the right to control." *Indus. Comm'n of Ohio v. Laird*, 126 Ohio St. 617, 619, 186 N.E. 718, 719 (Ohio 1933). However, where such control is found to be dispositive, there is often a contract spelling out the obligations. *See*, *e.g.*, *Walker v. Lahoski*, No. 19293, 1999 WL 548978, at *3 (Ohio Ct. App. July 28, 1999) ("Walker signed a contract in which she acknowledged that she was an independent contractor relative to Genny's and that she would be an independent contractor relative to the customer, absent agreement by the customer that she could be considered the customer's employee."). Here, there is no such document, and the only evidence that Wintrow had the potential right to control Plaintiff is his answer to a hypothetical question in his deposition.

Therefore, the Court finds that Wintrow and Barberton did not have the type of relationship whereby Barberton was providing a "quasi-temporary employment service" to Wintrow which would establish as a matter of law that Wintrow was Plaintiff's employer for purposes of workers' compensation immunity. *Accord Below*, 840 N.E.2d at 221 (finding genuine issue of material fact where employer provided drivers with trucks; maintained control of scheduling, dispatching and contact with drivers; provided drivers with route information; provided payment to drivers; paid for all workers' compensation and unemployment payments; and transportation delivery agreement states that employer maintains exclusive control over its employees). Accordingly, Wintrow is not entitled to summary judgment and its motion is DENIED.

### E. Motion to Amend

Plaintiff has moved to amend his Complaint to add an employer intentional tort claim against Wintrow if the Court grants Wintrow's Motion for Summary Judgment on grounds that, as a matter of law, Wintrow was Plaintiff's employer.  Plaintiff explains that absent a finding that Wintrow was Plaintiff's employer, Plaintiff does not intend to file an amended complaint.  (Doc. 45, PAGEID # 1032).  Because the Court has not made such a finding, the Court finds that Plaintiff's motion is DENIED as MOOT.

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Defendant Barberton Construction's Motion for Summary Judgment. (Doc. 21) is **GRANTED**;

    a. Plaintiff's employer intentional tort claim against Barberton is DISMISSED;

    b. Barberton Construction is DISMISSED as a party from this matter;

2. Defendant Wintrow Construction Corporation's Motion for Summary Judgment (Doc. 22) is **DENIED**;

3. Plaintiff's Motion to Amend Complaint (Doc. 35) is **DENIED as MOOT**;

4. Defendant Wintrow Construction's Motion to Strike Affidavit of Zachary Wilson (Doc. 40) is **GRANTED in PART** and **DENIED in PART**;

5. Defendant Wintrow Construction's Motion to Strike the Expert Report of Phillip L. Colleran (Doc. 41) is **GRANTED** as to Colleran's opinion that Wintrow had deliberate intent to injure Plaintiff because it furnished an unguarded grinder to Plaintiff.

**IT IS SO ORDERED.**

                                               */s/ Michael R. Barrett*
                                               Michael R. Barrett
                                               United States District Judge